UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARC W. JOHNSON,

                              Plaintiff,

        -against-                                          1:06-CV-1226 (LEK)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                              Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        On August 26, 2003, Plaintiff Marc W. Johnson ("Plaintiff") filed an application for

Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act").  In that application,

Plaintiff asserts that he has been disabled since July 1, 2003.  The Commissioner of Social Security

("the Commissioner") denied him benefits for lack of disability.

        Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).  Compl. (Dkt. No. 1).  Both parties have moved for judgment on the

pleadings.  For the reasons that follow, the Commissioner's determination of no disability is

vacated, and the matter is remanded for further administrative proceedings.

## II.     BACKGROUND

### A.  Procedural History

        Plaintiff protectively filed an application for disability benefits on August 26, 2003.  R.

75-77.[1]  That application was denied and Plaintiff timely requested an oral hearing, which

subsequently took place on December 2, 2004, with Administrative Law Judge ("ALJ") Thomas P.

Zolezzi presiding.  R. 193-221.  Plaintiff, represented by counsel, appeared and provided testimony.

R. 193-221.  A second, supplemental hearing took place on May 23, 2005, also in front of ALJ

Zolezzi, in which Plaintiff, again represented by counsel, testified, and a vocation expert ("VE"),

Dr. Peter Manzi, Ed.D., appearing telephonically, answered hypotheticals posed by the ALJ and

Plaintiff's attorney.  R. 222-72.  ALJ Zolezzi issued a decision on August 4, 2005, in which he

determined that Plaintiff is "not-disabled" under the Act.  R. 12-19.  On October 3, 2005, Plaintiff

requested review of that decision by the Appeals Council.  R. 8, 191.  On August 17, 2006, when

the Appeals Council denied review, R. 4-7, the ALJ's determination became the final decision of the

Commissioner.

Plaintiff, acting through counsel, commenced this action on October 10, 2006.  Compl. (Dkt.

No. 1).  The Commissioner filed an Answer on February 5, 2007.  Dkt. No. 5.  Both parties have

moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  See Pl.'s

Br. (Dkt. No. 15); Def.'s Br. (Dkt. No. 16).

**B. Plaintiff's History**

Plaintiff was born September 26, 1947, holds a bachelor's degree, and completed thirty

hours of graduate work beyond his bachelors.  He was 55 years old on July 1, 2003, the alleged

onset date of his disability, and 57 years old at the time of his hearing.[2]  R. 75, 88, 94, 201.  Plaintiff

---

[1] Citations to the underlying administrative record (Dkt. No. 4) are designated as "R."

[2] Plaintiff qualifies as a person of "advanced age," a category to which special rules apply relating to vocational adjustments.  20 C.F.R. §§ 404.1563; 404.1568(d); 416.963; 416.968.

complains of severe high frequency hearing loss and tinnitus (ringing in the ear) in both ears, which keep him from hearing and distinguishing any sound source when other ambient exists.  R. 88, 124, 202.  Prior to his alleged disability, Plaintiff had worked essentially without interruption since September of 1969 as a music teacher in public schools.  R. 89.  According to Plaintiff, he stopped working when he "could not hear clearly what an individual student was saying [and] had much trouble hearing an individual instrument in the band or an individual singer in the chorus.  Also[] the ringing ha[d] gotten worse and was very distracting, etc." R. 88.  Aside from its significant impact on Plaintiff's ability to perform his job, Plaintiff does not allege that his hearing loss has greatly limited his daily activities, which he reports to be varied and wide-ranging, though he notes that he does not go to noisy gathering places.  R. 127-28.  Plaintiff complains that his hearing loss was further exacerbated when someone standing nearby Plaintiff shot off a gun during a school assembly.  R. 91, 205.

Plaintiff does not allege that his hearing loss impairs his ability to concentrate, remember, deal with stress, or maintain social interactions with others.  See generally 123-30, 212-18.  He does claim that the tinnitus makes concentration difficult and fatiguing, particularly when background noise, especially from multiple sound sources, are present, or when there is complete quiet.  See, e.g., 227, 263-64.

**C.  Medical Records**

*1.  Hearing Loss and Tinnitus*

On July 17, 1991, Plaintiff went to Sunnyview Speech & Hearing Center for an audiology exam.  R. 91, 137-42.  The exam notes Plaintiff's hearing is normal bilaterally up to 2000 Hz at which point his hearing in the right ear "drops sharply to  severe high frequency loss [at] 3000 Hz"

3

and in the right ear"drops to a moderate to severe loss [a]t 4-8000 Hz." R. 137. Plaintiff received a hearing aide to help rectify that impairment. R. 91, 100, 137. He claims that the hearing aide has not helped. R. 129.

On August 29, 2003, Plaintiff underwent an audiology evaluation at Madison Hearing Center that revealed his hearing to be within normal limits from 250 to 2000 Hz with a mild sloping to severe high frequency sensorineural hearing loss from 3000 to 8000 Hz for the left ear; in his right ear, hearing was within normal limits from 250 to 1000 Hz with a mild precipitously sloping to severe sensorineural hearing loss from 2000 to 8000 Hz. Speech discrimination ability was noted as excellent bilaterally at comfortable loudness levels. R. 143-49. Dr. Megan McGuire diagnosed Plaintiff as "communicatively handicapped in regard to hearing acuity, especially in groups or in background noise[; ] includ[ing] a classroom setting," noted that the above results were "grossly consistent with test results obtained . . . on July 17, 1991." R. 143.

Plaintiff's primary care physician, Dr. Phillip Hunter, submitted a diagnosis that Plaintiff "has severe hearing loss and tinnitus, leaving him communicatively handicapped in regard to hearing acuity." R. 150. Dr. Ernest Lee, who saw Plaintiff on September 22, 2003, noted speech discrimination was 96% in both ears at 55 decibels, but found that Plaintiff has confirmed sensorineural hearing loss with the left side worse than the right. R. 159-67. He states that Plaintiff's high frequency hearing impairment leaves him unable to function as a musician or music teacher. R. 163. Dr. Lee encouraged amplification, noting that improvements have occurred in hearing aide technology since Plaintiff's previous attempt to use a hearing aide device. R. 167. However, Dr. Lee opined that if the hearing aide did not work, he did not believe there exists any other effective treatment. R. 167.

4

Dr. G. Spitz, M.D., a State Agency medical examiner, reviewed Plaintiff's file and reported on March 7, 2004 that Plaintiff suffered from a moderate impairment.  He commented that Plaintiff's "RFC precludes work in high ambient noise environments or where good hearing is essential to job performance or safety.  Claimant has the hearing necessary to avoid ordinary hazards in the work place."  R. 174.

Roger Kuehnlenz provided a vocational assessment of Plaintiff on March 12, 2004.  He notes that Plaintiff "is capable of physically and communicatively to perform a wide range of work where there is no high ambient noise and acute hearing is not essential to job performance."  R. 175.  He noted, however, that Plaintiff could not continue to perform as a music teacher.  He provided three examples of medium unskilled jobs that he opined Plaintiff was capable of performing: Hospital Cleaner; Linen Room Attendant; and Golf Range Attendant.  R. 175.

*2.  Musculoskeletal Impairment*

Following his hearing, Plaintiff submitted a report from Dr. J. Ernest Mincy, M.D.  R. 184-85.  Dr. Mincy relates that he saw Plaintiff for a consultation on October 21, 1991.  Plaintiff was "not in acute pain" and could "flex and extend his neck without any problem."  Dr. Mincy diagnosed Plaintiff as suffering from a ruptured disc at 6-7 on the left side and opined that he may require surgery in the future.  R. 185.  Dr. Mincy's opinion is confirmed by MRI.  See R. 189.  Dr. Mincy noted that Plaintiff's discogenic disorder had not prevented him from continuing to work full time as a music teacher.  R. 184.  In connection with his application, Plaintiff went to St. Peter's Hospital for an examination on June 9, 2005.  That exam revealed the same discogenic disease with disc space narrowing and osteophyte formation, but no slippage.  R. 189.

On June 9, 2005, in connection with his application, Plaintiff went to Dr. Edward Sheid, Jr.,

M.D. for an assessment.  R. 181-83.  Dr. Sheid notes that Plaintiff was not in any pain or distress

and had an unremarkable gait.  R. 182.  Dr. Sheid noted that Plaintiff's strength was 5/5, his reflexes

were 2+ and symmetrical, and he had mildly limited spine motion.  R. 181-83.

Plaintiff also submitted a note from Dr. Della Croce, his chiropractor, dated January 19,

2005.  That note states that "due to disc problem . . . it is recommended and advised not to lift over

10 lbs. and no repetitive motion of lifting the 10 lbs. during the course of the day."  R. 187.  Brad

Elliot, another chiropractor, submitted a similar assessment on June 13, 2005.  R. 180.

**C.  The Hearing**

At his December 2, 2004 hearing, Plaintiff testified that he had tinnitus and severe hearing

loss in both ears.  Plaintiff stated that he had no problems standing, sitting, walking, bending,

kneeling, squatting.  He thought that he could lift between 50-70 pounds, and denied any problems

grasping or holding things.  Plaintiff noted that he experiences back pain that sometimes hampers

his physical abilities.  For instance, he threw his back out lifting a wheelchair.  R. 202-03.

Plaintiff explained that his tinnitus manifest as a "constant and very loud" high frequency

ringing in both ears, and that "[t]he affect of the hearing loss is that in a room with any other noise,

[he] can't pick out one person's voice so [he] can't tell what they're saying. . . . Basically [he]

hear[s] bass but not treble."  R. 203.  He stated that the high frequency ringing exacerbates his

hearing loss.  R. 203.  He testified that "the only scenario where [he] can hear pretty accurately" is a

one-on-one conversation in an otherwise quiet environment, and even then the ringing is very loud,

and he can hear only if a person is speaking strongly and loudly.  R. 204, 212, 217.  The ALJ noted,

that as they were speaking, Plaintiff focused on him very intently as if reading his lips.  R. 204.

The ALJ noted Plaintiff's 30 year work history as a music teacher and inquired as to the

6

affect of Plaintiff's alleged impairment on his employment.  Plaintiff explained that he left his job as a result of his hearing problems.  He testified that, in listening to his band or chorus, he could hear the soprano, alto, and tenor sounds, but lost his ability to differentiate subtler distinctions on the high end of the sound spectrum, for example, the difference between a clarinet and flute playing the same note. R. 206.

Plaintiff recounted using a hearing aid which made it "a tiny, tiny bit easier to differentiate the consonants maybe, but it doesn't do anything for the ringing and made everything very, very tinny and sharp-sounding and edgy." R. 209.  Plaintiff explained that the doctors have said that nothing else could be done.

Plaintiff testified that his hearing impairments made certain activities more difficult, such as driving,  shopping, dining, playing sports, or going to the movies, though he still managed to engage in them. R. 212-15.  Plaintiff also stated that he has problems when he is alone in a quiet room, as "the ringing is huge" and becomes "close to unbearable." R. 215, 229.  As a result, he sometimes feels better in crowded places "simply because [he] . . . can focus on other things," and he explained that is easier for him to complete solitary tasks when he has a radio or some other sound source to distract him from the ringing.  Plaintiff testified that "[t]he only [other] escape from that [ringing] is to take a nap or go to sleep.  My escape is basically going to bed . . . .  when you're sleeping you don't hear the ringing." R. 263.

Recognizing Plaintiff's hearing loss as a non-exertional impairment,[3] Judge Zolezzi held a supplemental hearing on May 23, 2005 for the purpose of receiving testimony from an impartial

_____

[3]  "Nonexertional limitations" are those imposed by impairments and related symptoms affecting a claimant's ability to meet the requirements of jobs other than the strength demands.  See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

vocational expert ("VE").  Dr. Manzi, appearing by telephone, provided that testimony.  R. 222-72.

Dr. Manzini began by noting that Plaintiff's prior position as a music teacher qualifies as light and

skilled work.  R. 231.  The VE opined that a person of Plaintiff's age and educational and vocational

background, who was able to perform medium to heavy work, but who had the non-exertional

impairments documented in Plaintiff's record, could definitely not perform Plaintiff's past work.  R.

232.  Such a person, the VE opined, would have skills or semi-skills that would be directly

transferable to other sedentary or light work, such as record and data keeping, people skills,

teaching, and training.  R. 232.   He later revised this opinion, stating that the people skills are not

transferable.  R. 237.  The VE also said, over Plaintiff's attorney's objections, that Plaintiff's skills

in calculation would be transferable; Plaintiff's counsel noted that Plaintiff testified that he had not

used a calculator or computer in his prior profession.  R. 238, 240.  Counsel further objected that the

VE was conflating transferable skills and traits.  See, e.g., R. 240-42, 257.  The VE opined that there

were jobs that exist of which a person with Plaintiff's background and limitations could perform

both requiring and not requiring computer skills, and that the reasoning and record keeping skills

Plaintiff learned as a teacher would allow him to learn any basic calculation skills required in those

jobs.

        The ALJ next inquired into the existence of medium exertional level unskilled jobs that a

person with Plaintiff's abilities could perform.  Plaintiff's counsel objected that skilled and semi-

skilled workers are not expected to do unskilled work after the age of 55.  R. 243.  The VE noted

that in this category, Plaintiff would be able to perform entry level unskilled jobs such as a laundry

worker, industrial cleaner, and kitchen helper, all of which exist in the national and local economies.

Plaintiff's lawyer asked if the VE was accounting for the hearing impairments Plaintiff suffered

when considering these positions.  In particular, he asked if background noise of washer and dryers, etc. would prevent a person with such limitations from hearing the instructions he would receive in these jobs.  The VE stated that "every job is going to have some background noise."  Plaintiff's attorney insisted that difficulty in hearing when background noise is present must be part of the hypothetical, that is, the hypothetical individual must be "communicatively handicapped" in such a way that the person could not distinguish or understand what a person was saying when background noise was present.  The VE answered that if this additional impairment was present, the person could not perform any of the named jobs except the calculator job.  R. 246-249.

Plaintiff's attorney again insisted that the appropriate hypothetical would include direction that the impairments would also include the inability to be alone in a quiet setting, because the person would suffer unbearable, oppressive ringing, and could not include an environment where multiple sounds, e.g. multiple conversations were occurring and where he would need to focus on just one.  R. 250-51.

The VE went on to testify that Plaintiff could easily adjust, over the course of approximately one month, to the unskilled positions that he mentioned previously.  R. 252-55.  The VE discounted Plaintiff's advanced age and education as relevant to whether Plaintiff could adjust to unskilled work.  See, e.g., R. 255.  The VE noted that the fatigue that Plaintiff experiences as a result of the constant ringing in his ear could impair his ability to perform work.  The VE asked whether headphones or background music would alleviate that fatigue; Plaintiff answered that headphones make things worse.  R. 265-68.

Counsel noted that the ALJ's hypothetical questions to the VE regarding a person capable of medium work did not account for Plaintiff's physical limitations.  Though not part of his initial

application, Plaintiff testified at both hearings that he occasionally threw his back out and had a

bulging disc in his neck, which affected his ability to lift.  R. 202-03, 268-70.  He testified he could

not lift more than about 50 pounds without throwing out his back, and that he could not lift more

than ten to twenty pounds frequently.  R. 269.  Twisting, he said, makes things worse.  Plaintiff

stated that he goes monthly to Dr. Della Croce, a chiropractor, to help with his back and had seen

Dr. J. Ernest Mincy, a neurosurgeon, who diagnosed the bulging disc.  R. 270; 184-85.  Following

the supplemental hearing Plaintiff filed medical and non-medical records to support this testimony.


### III.      LEGAL STANDARD

#### A.  Standard of Review

District courts have jurisdiction to review claims contesting a final decision by the

Commission of Social Security denying disability benefits.  42 U.S.C. § 405(g); 42 U.S.C. §

1383(c)(3).  In reviewing any such claim, a district court may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d

856, 860 (2d Cir. 1990).  Rather, it must defer to the Commissioner's determination unless the

correct legal standards were not applied or substantial evidence in the record does not support the

determination.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).  Thus, even where substantial

evidence supports an ALJ's conclusion, if "there is a reasonable basis for doubt whether the ALJ

applied correct legal principles, application of the substantial evidence standard to uphold a finding

of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her

disability determination made according to the correct legal principles."  Id.  Likewise, a reviewing

court should remand any case where an ALJ fails to set forth with sufficient specificity the crucial

10

factors underlying a determination such that the court is able to decide whether that determination is supported by substantial evidence, and the case should be remanded. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984); see also Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (remand is appropriate where a reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required").

"Substantial evidence" requires more than a mere scintilla of evidence, yet less than a preponderance. Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986). It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Ryan v. Astrue, 650 F. Supp. 2d 207, 216 (N.D.N.Y. 2009). Where evidence is susceptible to more than one rational interpretation, a court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. 42 U.S.C. § 405(g). Granting judgment on the pleadings is appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings. FED. R. CIV. P. 12(c); Sellers v. M.C.

Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  Remand is warranted where there are gaps in the

record and further development of the evidence is needed, or where the ALJ has applied an

improper legal standard.  See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir.

1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is most appropriate where

further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts v. Chater, 94

F.3d 34, 39 (2d Cir. 1996) (citation omitted).  Additionally, remand is appropriate to allow for the

consideration of additional new evidence which is material to the case and where good cause exists

for the failure to submit that evidence in prior proceedings.  Melkonyan v. Sullivan, 501 U.S. 89

(1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).  By contrast, reversal and remand

solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and

further development of the record would not serve any purpose.  Rosa, 168 F.3d at 83; Parker, 626

F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

### B.  Benefits Eligibility

Under the Social Security Act, an individual is disabled if he is unable "to do any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  20 C.F.R. § 416.905(a).  The Social Security Administration ("SSA")

has established a five-step sequential evaluation process to determine whether a claimant over the

age of 18 is disabled under the Social Security Act.  See 20 C.F.R. §§ 416.920, 404.1520; see also

Bowen v. Yuckert, 482 U.S. 137 (1987) (upholding the validity of this evaluation process); Shaw v.

Chater, 221 F.3d 126, 132 (2d Cir. 200) (citing DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d

Cir. 1998)).  "If at any step a finding of disability or non-disability can be made, the SSA will not

review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the burden of proof for the first four steps, and the Commissioner bears that burden in step five.  See Bowen, 482 U.S. at 146; Shaw, 221 F.3d at 132.

20 C.F.R. § 404.1520 details the SSA's five-step analysis: at step one, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.[4]  If the claimant is not engaged in such activity, the ALJ advances to step two of the analysis and considers whether the claimant has a severe impairment meeting the "durational requirement"[5] and significantly limiting her physical or mental ability to perform basic work activities.  In making this determination, the ALJ does not consider the claimant's age, education, or work experience.  Assuming the ALJ finds the claimant has a severe impairment(s), the ALJ continues to step three and determines whether the impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4 ("the Listings").  If the ALJ concludes that the claimant's impairment(s) does meet or equal one or more of the Listings, the claimant is deemed disabled.  If the claimant's impairment(s) does not meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess whether, despite the claimant's severe impairment, the claimant's residual functional capacity ("RFC")[6] allows him to perform his past work.

---

[4] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities."  20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

[5] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months.  20 C.F.R. § 404.1509.

[6] RFC is defined as the most a claimant can do after considering the effects of all her medically determinable physical and mental limitations, including those not deemed "severe."  See 20 C.F.R. § 404.1545; SSR 96-8p.

13

If the claimant is unable to perform her past work, the fifth step in the sequential analysis is a two-part process which requires the ALJ to first assess the claimant's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that she could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler, 461 U.S. 458, 460 (1983).  In the first part of this analysis, an ALJ must consider that a claimant's advanced age (55 or older) significantly affects that claimant's ability to adjust to other work, and factor that consideration into the analysis.  20 C.F.R. §§ 404.1563; 416.963.  The ALJ satisfies the second part of the fifth step by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids").  See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).  Where a claimant only suffers from exertional impairments, the grids are conclusive of the existence of a disability; where, however, "a claimant suffers from additional 'nonexertional' impairments, the grid rules may not be controlling."  Id. at 605.


IV.    DISCUSSION

   A. The Commissioner's Decision

      Following the hearings, the ALJ made the following determinations, which the Commissioner subsequently adopted as his final decision: 1) Plaintiff meets the nondisability requirements set forth in § 216(i) of the Act and is insured for DIB through the date of his decision; 2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; 3) Plaintiff has a severe impairment; 4) Plaintiff's medically determinable impairment does not meet or medically equal any of the Listings; 5) Plaintiff's subjective complaints are only somewhat credible;

14

6) Plaintiff has the RFC to perform at a medium exertional level but is unable to hear high frequency sounds and so should not work in an environment requiring acute hearing or sound differentiation, and should work in an environment where a radio is permitted to mask his tinnitus; 7) Plaintiff does not have the RFC to perform his past relevant work; 8) Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers, including the positions of calculator machine operator, laundry worker, industrial carpet cleaner, and kitchen helper; and 9) a finding of "not-disabled" is appropriate in light of the VE's testimony and the framework of Rule 203.16 of Appendix 2, Subpart P of the Regulations.  R. 18-19, 4.  In reaching the above determinations, the ALJ placed great weight on the opinions of Dr. McGuire, Mincy, Hunter, and Lee, as well as on the opinion of State Agency examiner Spitz.  R. 14-15.  The ALJ accorded little weight, if any, to the opinions of Dr. Elliot and Della Croce.  He gave great consideration to VE Kuehnlenz' opinion regarding the positions Plaintiff could perform, though less than great weight to his opinion regarding Plaintiff's vocational abilities.[7]  R. 16.  The ALJ found Plaintiff's testimony "only somewhat credible," due to perceived inconsistencies between Plaintiff's allegations of being totally disabled and unable to perform any work and the medical record coupled with Plaintiff's account his daily activities.  R. 16.  Finally, in determining that the Commissioner had met his burden of establishing that jobs exist in the national economy which Plaintiff is capable of performing, the ALJ relied on VE Manzi's testimony, including his assessment that Plaintiff had gained the transferable skills of record keeping, supervising, and training.  The ALJ dismissed the hypotheticals posed to the VE by Plaintiff's attorney as inconsistent with Plaintiff's RFC.  R. 17.

---

[7] The ALJ apparently gave great consideration to the content of Mr. Kuehnlenz' assessment but, due to lack of information on Mr. Kuehnlenz' credentials, did not accord great weight to the source of that content.  R. 16.

15

**B.  Plaintiff's Objections**

Plaintiff contends that the ALJ erred in: 1) determining that Plaintiff is capable of performing medium work; 2) relying on the VE's testimony to support the unfavorable decision; 3) improperly assessing Plaintiff's credibility and RFC; 4) failing to find that Plaintiff met Listings 2.07, 2.08, and 1.04; and 5) failing to account for Plaintiff's age, transferable work skills, and vocational adjustment.  Pl.'s Br. at 4.  Hence, Plaintiff argues that the Commissioner's adoption of the ALJ's unsupported and/or legally incorrect findings is in error.  Id.

**C.  The ALJ's determination that Plaintiff has the RFC for medium work is not supported by substantial evidence**

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c).  It is unclear how the ALJ reached his determination that Plaintiff is capable of performing such work.  The ALJ noted Plaintiff's musculoskeletal impairment.  R. 12-13, 14.  He drew this conclusion from medical evidence in the record, including Dr. Mincy's 1991 assessment, R. 184-85, and recent MRIs, R. 189.  The ALJ, in fact, noted that Dr. Mincy's assessment was of "great value."  R. 15.  Nevertheless, the ALJ did not obtain an RFC assessment of Plaintiff's spine.

SSR 96-8p requires, unless the medical evidence is alone sufficient, a function by function RFC assessment of the individual's capacity to perform each of the functions associated with work at a given exertional level.  This enables an ALJ to determine the effect of each impairment a claimant suffers from in relation to the criteria of a given job classification.  SSR 96-8p thus recognizes that "it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level."

16

The medical evidence in the record does not support the ALJ's determination that Plaintiff has the RFC for medium work. There is no such evidence in the record, for example, assessing Plaintiff's capacity to frequently lift 50 pounds at a time or carry objects weighing up to 25 pounds. See 20 C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c). The only indication that Plaintiff could so perform comes from his testimony during the first hearing. R. 202-03. That testimony is not medical evidence sufficient to support the ALJ's RFC determination. This is true even had the ALJ not found Plaintiff's testimony not fully credible; it is even more deficient given that credibility determination. Moreover, Plaintiff testified that his back trouble limits his ability to lift objects. Plaintiff did not describe the frequency with which he could lift such weight. Plaintiff reiterated the limitations that his back imposed in lifting objects during the supplemental hearing. R. 269.

In support of his RFC determination, the ALJ highlights Dr. Mincy's notation that Plaintiff continued working full-time despite his cervical condition. R. 15. Dr. Mincy made that comment when Plaintiff worked as a music teacher, a position classified and performed as light and skilled work (SVP of 7). R. 231. Thus, Dr. Mincy's comment provides no support for the conclusion that Plaintiff was capable of full-time employment in a job classified as medium work.

The ALJ dismissed the opinions of Plaintiff's chiropractors, both of whom stated that Plaintiff would not be capable of medium work. R. 180, 187. The regulations do not list chiropractors as "[a]cceptable medical sources" for purposes of the treating-physician rule. 20 C.F.R. § 404.1513(a); see id. § 404.1513(e)(3) (chiropractors are "[o]ther sources"); Diaz v. Shalala, 59 F.3d 307, 314 & n.8 (2d Cir. 1995). ("[T]he ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him . . . ."). The ALJ determined that little weight was appropriate, as he found the chiropractors' opinions inconsistent

17

with the record as a whole and not supported by independent records. R. 16. The record does not indicate, but also does not contradict the severity of the limitations to which the chiropractors attest. Chiropractors Elliot and Della Croce both state that Plaintiff should not engage in repetitive motion and repetitive lifting of objects in excess of ten pounds. R. 180, 187. The ALJ states that "the records simply do not support such an extreme weight lifting limitation . . . ." R. 16. In fact, Plaintiff's records do not address this issue at all, nor the chiropractors' concern with repetitive motion. The ALJ further notes that Plaintiff has been improving with chiropractic treatment and has been able to continue working despite the cervical impairments that doctors Elliot and Della Croce stress. Again, there is nothing in the record indicating that any improvement by Plaintiff in this regard contradicts the chiropractors' assessment, nor is there any indication that Plaintiff's prior work required him to perform inconsistently with the limitations that the chiropractors recommend.

While an ALJ may dismiss chiropractors' opinions in the face of contradictory evidence or because it is unsupported, where the overall record is not developed with regard to the issues addressed in those opinions, the ALJ should actively develop that record rather than discount the limited information contained therein. See Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996); Silberman v. Astrue, 2009 WL 2902576 (S.D.N.Y. Aug. 14, 2009).

In sum, the ALJ's determination that Plaintiff retains the RFC for medium work is not supported by substantial evidence in the record. As three of the four jobs (laundry worker, industrial cleaner, and kitchen helper) that the ALJ found Plaintiff capable of are designated as medium, any determination that Plaintiff is not disabled because he can perform those jobs is also unsupported. The Court need not determine at this time whether, assuming Plaintiff's RFC does allow him to perform medium, the above jobs are compatible with Plaintiff's hearing impairments.

**D.   The ALJ's determination that Plaintiff's impairments are not of Listing-level severity is supported by substantial evidence**

The ALJ found that, "[a]lthough the [Plaintiff] has an impairment that is considered to be 'severe,' the record does not disclose medical findings which meet or equal in severity the clinical criteria of any impairment in Appendix 1, Subpart P to Regulations No. 4."  R. 13.  Plaintiff asserts that this was an error, and that the record indicates that he meets Listings 2.07; 2.08; and 1.04. Plaintiff's contention is incorrect, and the ALJ's determination shall not be disturbed.

Among the requirements of Listing 2.07 is a history of frequent attacks of balance disturbance.  There is nothing in the record indicating Plaintiff has suffered these attacks.  Rather, Plaintiff explicitly denies experiencing any vertigo.  R. 143.  Listing 2.08 requires a hearing impairment not restorable by a hearing aid and manifested by:

> A.   Average hearing threshold sensitivity for air conduction of 90 decibels or greater and for bone conduction to corresponding maximal levels, in the better ear, determined by the simple average of hearing threshold levels at 500, 1000 and 2000 hz. (see 2.00B1); or
> B.   Speech discrimination scores of 40 percent or less in the better ear;

Appendix 1, Subpart P of Regulation No. 4, § 2.08.  Plaintiff, who bears the burden of proof at this (third) step, see Bowen, 482 U.S. at 146, has not shown he meets these requirements.  Plaintiff's hearing was found to be within normal limits from 250 through 2000 Hz and his speech discrimination abilities were found to be excellent bilaterally at comfortable loudness levels.  R. 143.  Plaintiff's hearing was found to be 96% in both ears at 55 decibels.  161.  The record does not clearly show that Plaintiff's hearing is not restorable by a hearing aide.  Dr. Lee, in fact, encouraged Plaintiff to try using a hearing aid despite his prior experience, noting that improvements have occurred in the technology since Plaintiff's previous attempt to use a hearing aide device.  R. 167.

Listing 1.04, which deals with spinal disorders, requires a threshold condition, e.g., herniated

nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet

arthritis, vertebral fracture, that results in a compromise of a nerve root or the spinal cord, and

includes evidence of nerve root compression; or confirmed spinal arachnoiditis; or confirmed

lumbar spinal stenosis resulting in pseudoclaudication.  Appendix 1, Subpart P of Regulation No. 4,

§ 1.04.  Plaintiff offers no evidence of his meeting these conditions.  Hence, the Court finds no error

in the ALJ's determination that Plaintiff does not meet these Listing-level impairments.

### E.  The ALJ's credibility analysis is not sufficiently documented

The ALJ determined that the Plaintiff's subjective account of his limitations were only

somewhat credible.  R. 16, 18.  He made that determination based on perceived inconsistencies

between Plaintiff's account of his relatively unencumbered daily activities and Plaintiff's assertion

that he is totally disabled and unable to work.  R. 16.  He also found Plaintiff's account inconsistent

with the record.  R. 16.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical

evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth

his or her reasons 'with sufficient specificity to enable us to decide whether the determination is

supported by substantial evidence.'"  Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)

(quoting Gallardo v. Apfel, No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  An

ALJ must provide specific reasons for his credibility finding; this rationale must be sufficiently

specific to make clear to the claimant and reviewing courts what weight the ALJ afforded to the

claimant's statements and the reasons for that weight.  See SSR 96-7p.  The ALJ's credibility

assessment is entitled to great deference if it is supported by substantial evidence.  Murphy v.

Barnhart, No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citations omitted).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. §§ 404.1529, 416.929. The ALJ must first determine whether, based upon the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a).

Second, if the medical evidence establishes the existence of such impairments, the ALJ need only evaluate the intensity, persistence, and limiting effects of the claimant's symptoms and determine the extent to which they limit that claimant's capacity to work. See 20 C.F.R. § 404.1529(c). If the objective evidence does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the claimant's subjective complaints by considering the record in light of the following factors: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. The ALJ should also consider other factors, such as the claimant's prior work history. SSR 96-7p; Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

The ALJ failed to follow the above requirements. First, he did not address the step one requirement of determining whether based upon the objective medical evidence, Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20

C.F.R. § 404.1529(a).  Rather, the ALJ simply discounts Plaintiff's subjective complaints due to its

inconsistency with the record.  He does not note what in the record is inconsistent.  In fact, the

record indicates that Plaintiff is communicatively disabled.  R. 143, 150.  Moreover, the record, as

noted above, does not indicate that Plaintiff is capable of performing medium work.  The ALJ may

be referring to Plaintiff's account of his experiencing fatigue from concentrating over the ringing in

his ears.  Nothing in the record suggests that this symptom is inconsistent with Plaintiff's

documented impairments.  Where a plaintiff's subjective account finds some support in the record,

an ALJ's undocumented assertion that the account is not credible because it conflicts with the

record is insufficient for this Court to engage in a meaningful review, and thus requires remand.

Berry, 675 F.2d at 469.

　　　　The ALJ addressed only some of the factors listed in step two, stressing, in particular,

Plaintiff's report of his daily daily activities.  In listing seven factors for an ALJ to consider, 20

C.F.R. § 404.1529(c)(3) requires a more extensive analysis of Plaintiff's subjective account.

Vasquez v. Barnhart, No. 02-cv-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar.2, 2004)("a finding

that a claimant is capable of undertaking basic activities of daily life cannot stand in for a

determination of whether that person is capable of maintaining employment, at least where there is

no evidence that the claimant engaged in any of these activities for sustained periods comparable to

those required to hold a sedentary job.")(internal quotation marks omitted).  Additionally, there is no

indication that the ALJ took Plaintiff's excellent work history into account when determining that

Plaintiff's claim of being unable to work at this point is only somewhat credible.  Plaintiff's

uninterrupted thirty-year  history should properly factor into the credibility assessment.  Rivera, 717

F.2d at 725. On  remand, the ALJ should provide a more thorough explanation for his assessment.

**F.  The ALJ's determination that Plaintiff obtained transferable skills of record keeping, supervising, and training during his prior employment is unsupported**

The ALJ relied upon VE Manzi's testimony in concluding that, as a music teacher, Plaintiff obtained the transferable skills of record keeping, supervising, and training, and that these skills would allow him to perform as a calculator machine operator.  R. 17.  The issue of transferable skills is relevant because, as noted above, *supra* sec. IV.C., the ALJ's RFC determination of medium is unsupported by the record.  Accordingly, Plaintiff's ability to perform the three unskilled medium work positions suggested by the VE and adopted by the ALJ cannot be used to direct a finding of "not disabled."  Only the semi-skilled sedentary calculator machine operator position remains.  As a semi-skilled position, Plaintiff would need to possess the required skills of that position in order for it to be an example of a job existing in the national economy that Plaintiff could perform.  See 20 C.F.R. § 404.1568(d) ("If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s)."); 20 C.F.R. § 416.968.  For a person of Plaintiff's age, transferable skills are those "skills that can be used in other jobs, [i,e.,] when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work.  This depends largely on the similarity of occupationally significant work activities among different jobs."  Id.  Factors to be considered in determining transferability include whether "(i) [t]he same or a lesser degree of skill is required; (ii) [t]he same or similar tools and machines are used; and (iii) [t]he same or similar raw materials, products, processes, or services are involved."  Id.

Social Security Ruling 82-41 defines a "skill" as

knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

Plaintiff's position as a music teacher did not require him to use a calculator or computer. R. 234. His training for that position was almost exclusively related to music with a small percentage (Plaintiff approximates 10%) devoted to teaching methods. R. 235. The grades that he gave were based on effort and achievement, not written assignment, and did not involve "adding up a bunch of scores on tests and then giving getting an average. [He gave] a grade based on [his] assessment of how hard the student was practicing and how hard they try in the performing group and in their lessons." R. 235. Record keeping, supervising, and training are not part of the music teacher job description. Nevertheless, VE Manzi believed that "a basic job where you're just performing simple calculations . . . could be done . . . . considering . . . the person's level of education." R. 237. The VE opined that because Plaintiff "had to be accurate with records about students and their performance . . . . [and] had to reason and make judgment about that, and then ultimately assign a certain grade . . . he has the ability to use a basic calculator." R. 240.

The record does not show that Plaintiff learned the skills required of a calculator machine operator during his tenure as a music teacher. The fact that Plaintiff has the ability, given his education and other traits, to reason and to learn to use a basic calculator, does not constitute a transferable skill acquired during his tenure as a music teacher. As Plaintiff's attorney pointed out during the supplemental hearing, the ability to reason is common to all skilled and semi-skilled

24

work.  R. 240-41.  It is not, therefore, a skill acquired through that work.

The ability to reason is too "vague [and] vocationally insignificant" to qualify as a skill.  See

Draegert v. Barnhart, 311 F.3d 468, 471 (2d Cir. 2002); id. at 476 (finding inter alia that the "ability

to learn and apply rules and procedures, which are sometimes hard to understand," and  "ability to

use reason and judgement in dealing with all kinds of people," did not qualify as skills when not

linked to particular tasks and were not explained in connection with past work or had be refined by

that experience); Gittens v. Astrue, No. 07 Civ. 1397, 2008 WL 2787723, at *8 (S.D.N.Y. June 23,

2008)("ability to communicate with others" is not a skill).  Hence, it cannot properly be categorized

as a transferable skill.  Neither can Plaintiff's capacity to learn to use a calculator or computer, due

to his ability to reason.  Plaintiff never used such devices in his prior position.  He may, indeed, be

able to acquire such skills, but that abstraction does not make them transferable skills he possesses.

The ALJ's determination that Plaintiff is capable of performing as a calculator machine

operator depends on his having acquired the transferable skills to perform that work.  There is

nothing in the record supporting that premise.  Accordingly, the Commissioner has not proven that

Plaintiff has the skills and capacity to perform in that position.  Further, for reasons previously

discussed, the Commissioner has not proven that Plaintiff has the RFC to perform medium work,

which is required for the remaining positions suggested by the VE.  On remand, the ALJ should

pose hypotheticals to a VE that fully account for Plaintiff's exertional and non-exertional

limitations, as well as his "advanced age."

For the reasons discussed, the Commissioner has failed to meet his burden at step five of the

analysis by showing that work exists in the economy that Plaintiff is capable of performing.  The

Court, therefore, vacates the Commissioner's determination that Plaintiff is "not disabled" under the

Act.

## V.  CONCLUSION

Accordingly, it is hereby

**ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the

matter is **REMANDED** for further administrative proceedings; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:  October 26, 2010
          Albany, New York

Lawrence E. Kahn
U.S. District Judge

26